[Civ. No. 15046.   Second Dist., Div. Three.   Mar. 19, 1946.]

WADE HEARE, Respondent, v. THOMAS J. O'REILLY, Appellant.

Hugh E. McManus and Marley Fisher for Appellant.

Hiram T. Kellogg for Respondent.

WOOD, J.—Defendant appeals from a judgment in favor of plaintiff. Plaintiff claimed the proceeds of the sale of a house and lot, except the amounts advanced by defendant, with interest thereon, in the purchase and improvement of the property. Defendant, who held the legal title to the property, also claimed the proceeds. The court awarded plaintiff $2,085.17, which represented the difference between the selling price of the property and the amounts paid by defendant to purchase and improve said property, with interest on said amounts.

In August, 1942, plaintiff entered into negotiations for the purchase of a house and lot. The house had been partially burned, and the owner offered to sell the property for $1,400. About September 2, 1942, plaintiff told defendant that he planned to purchase the property. Plaintiff testified that the conversation took place in front of said property; that defendant told him it was worth ''twice'' as much as the purchase price asked and said, ''let me buy that, you pay me, and I will put some of my money on that''; and that defendant also told him to see the owner and he would pay cash and get the property ''cheaper,'' and save plaintiff some money. According to defendant, plaintiff came to his home and told him about the property, said that he had $400 with which he could repair the house and make it a home, and asked defendant if he would be interested in financing it; that defendant replied if it could be ''bought right'' he would finance it for plaintiff and he would make the payments so plaintiff ''would only owe'' him rent. Subsequently, plaintiff and defendant talked with the owner of the property who agreed to sell it for $1,350. Defendant paid the purchase price and the property was conveyed to him. He and plaintiff then entered into a written contract, dated September 10, 1942, whereby defendant agreed to sell and plaintiff agreed to purchase the property for $1,350 to be paid at the rate of $15 ''or more'' per month ''including interest at six per cent on the first day of each month beginning on the first day

of October, 1942.'' Time was of the essence of the contract. At the time of executing the contract plaintiff paid defendant $15, and $6.00 to reimburse defendant for escrow expenses. Plaintiff commenced repair work on the house and on September 17, 1942, while repairing the roof he fell therefrom and sustained injuries which confined him to his bed. He made no further payments on the property, and in November or December, 1942, while he was still confined to his bed, defendant called at his home and for the first time learned of the accident. Plaintiff testified that defendant then told him that he would release him from making the payments until he got on his feet—to ''make no more payments''; that defendant said if plaintiff ''ever got'' on his feet for him to continue the repair work. Defendant testified that at that time plaintiff told him the ''doctors and hospital'' had his money and he was ''broke,'' and that defendant would have to take the property back and they would ''fix it up'' so defendant could get his money out of it; that he told the plaintiff he would take the property back and if plaintiff wanted to supervise the repair work he would ''take care'' of him. In February, 1943, plaintiff resumed repair work on the house, and thereafter defendant periodically advanced money for payment of labor and materials. Plaintiff performed some of the work, hired the workmen and purchased the materials, but received no compensation for such services. Defendant visited the premises at various times, and both plaintiff and defendant had keys to the house. Plaintiff performed services to improve the premises until the middle of November, 1943. While he was so engaged, he inserted an advertisement in a newspaper offering the property for sale, and as a result received a letter from a prospective buyer, John S. Milburn. Plaintiff delivered the letter to defendant who, on or about November 8, 1943, sold the property to Milburn for $5,500. Plaintiff was present when the purchase price was discussed and agreed upon.

Plaintiff further testified that he and defendant discussed the matter of payments on the property at various times while the repair work was being done and defendant said there was no reason for plaintiff to hand defendant money while he was giving plaintiff money for repair work; that defendant said the payments could be easily made after the repair work was done; that defendant said he would advance the

money to improve the property and plaintiff could have it for $15 per month, and could either live in it or sell it, and he (defendant) "was doing it out of friendship"; that between April and June, 1943, defendant refused to pay some of the bills, and plaintiff borrowed $300, and used $255.09 of it to pay for labor for the repair work; that he used about 4,000 feet of secondhand lumber, which he owned, in repairing the house; that defendant at no time served notice upon him that the written agreement had been terminated; that he worked on the property until November 22, 1943; and that he lived in the house while he worked there.

Defendant testified that his occupation was buying and selling property, and he had done nothing else since he had been living in California, which was about 15 years; that he had known plaintiff about 10 years; that he told plaintiff to advertise the property for sale and if he could find any "clients" to send them to defendant "and we will deal with them"; that he let one prospective purchaser know he would advance money on the property if it were sold, and he "very likely" told her if she would make a deal with plaintiff regarding the property that he would carry the paper on it; that he sold the property for $5,500 with $1,500 as a down payment and the balance was to be paid at the rate of $35 or more per month; that he arranged the terms himself; that he paid the taxes for 1942-43; that the only agreement he had with plaintiff was the written one dated September 10, 1942; that plaintiff did not tell him he had to borrow money to pay some of the bills for the repair work; that he did not refuse to pay any of the repair bills; that he had expended $1,823 to improve the property; and that, considering the $1,350 for which he purchased the property and 6 per cent interest provided for in the agreement with plaintiff, he thought he had $3,458 invested in the property.

A witness called on behalf of plaintiff testified that she had been interested in buying the property and made an offer to plaintiff which plaintiff "thought" was all right, and he told her they would talk about it with defendant; that she talked with defendant in May, 1943, and he told her if she made any deal with plaintiff, it would be all right with defendant and that he "would carry the paper."

Plaintiff's wife testified that in 1943 defendant told her if she and her husband sold the property they could have whatever they made on it as all he wanted was his money back

with interest; and that during 1943 plaintiff did not live at the property.

Appellant contends that the evidence is "insufficient to sustain the findings necessary to the judgment." In support of this contention he asserts that Findings II, III, V, and VI are contrary to the evidence. He objects to the statement in Finding II, that appellant "received the sum of $2,120.07" from the purchaser of the property for the use of plaintiff. He states that the uncontradicted evidence shows that the property was sold on terms—$1,500 as a down payment and the balance at the rate of $35 per month—and that he, therefore, did not receive the sum of $2,120.07. The evidence shows that appellant sold the property for $5,500, and, although he testified that the whole amount was not paid in cash, the terms for payment were arranged by him and were satisfactory to him. It does not appear that he made any effort to obtain the selling price in cash, and apparently it was to his advantage to take part of it in monthly payments and receive interest on the unpaid balance. Under the circumstances herein the form of security which he did accept should be regarded as the equivalent of cash. Appellant objects to the recital in Finding III that plaintiff "purchased" the property "on or about the 10th day of September, 1942," and that plaintiff was to pay defendant the purchase price at the "rate of $15.00 per month." He asserts that there is no evidence that plaintiff purchased the property "on September 10, 1942"; that plaintiff did not receive a deed to the property; and that "on said date" he only agreed to buy. This contention is not sustained. The contract is captioned "Agreement of Sale and Purchase," and the evidence shows that on that date plaintiff commenced performance under the contract by paying $21 thereunder, $15 of which represented the payment for October 1, 1942, on the purchase price, and $6 for the escrow charges. Appellant also asserts that the statement in said finding that plaintiff was to pay the purchase price at the rate of $15 per month is contrary to the express terms of the written agreement which provided that plaintiff was to pay $15 per month, including interest at the rate of six per cent per annum. It is apparent that said finding referred to the total amount payable each month by plaintiff under the agreement—which amount included the interest. In Finding VII, the court

found that appellant was entitled to receive from the selling price the sum of $3,414.33, which included the purchase price of $1,350, together with interest thereon at "the rate of six per cent per annum." Appellant's objection to Finding V is not sustained. That finding was as follows: "That it is true the plaintiff agreed to pay the defendant Thomas J. O'Reilly the sum of $1,350.00; that he paid on account of said purchase price the sum of $21.00." Appellant contends that the finding that plaintiff agreed to pay defendant the sum of $1,350 is contrary to the express terms of the written contract which provided that plaintiff was to pay interest, taxes and the fire insurance premiums. That finding related to the purchase price plaintiff agreed to pay appellant. The interest, taxes and insurance were not included in the purchase price. There was no finding that plaintiff agreed to pay appellant $1,350 *only*, as is apparently appellant's interpretation of said finding. Appellant also objects to the following portions of Finding VI: "That it is true that the plaintiff and defendant . . . entered into an oral agreement under . . . which the defendant . . . was to sell the said property to John S. Milburn for said sum of $5,500.00, and that as part of said agreement it was understood and agreed between plaintiff and defendant . . . that said defendant would deduct from the amount of the purchase price the sum of money due . . . him on account of the balance of the purchase price of the aforesaid premises . . . and all additional advances made to plaintiff on account of . . . improvement of said premises." He contends that the portion of the finding relating to the purchase price and the deductions therefrom to be made by appellant is contrary to the evidence since the purchase price was not paid in cash. That portion of the finding was not contrary to the evidence. It is undisputed that the purchase price was $5,500, and that amount was not altered by the terms for the payment of same. Appellant also asserts that there is no evidence whatever to support that part of the finding which recites that there was an oral agreement between appellant and plaintiff "involving the sale to John S. Milburn." The evidence is sufficient to support the finding that appellant and plaintiff entered into an oral agreement to sell the property and that defendant would deduct from the amount of the purchase price the sum of money due him for amounts expended on the property, including the original purchase price. The evidence does.

not show that at the time of entering into the oral agreement John S. Milburn was specifically named as the purchaser. The parties intended to sell the property to someone, and the finding was not unsupported because the name of the purchaser may not have been known at the time the agreement was entered into. The evidence shows that pursuant to said oral agreement, plaintiff inserted the advertisement in a newspaper for a buyer, and that he was present and entered into the negotiations for the sale of the property. The name of the purchaser was not a material part of the finding.

▮ Appellant also contends that the court's failure to make findings on affirmative defenses raised by his answer was reversible error. By that answer he affirmatively alleged that plaintiff's first and second causes of action were founded upon an oral agreement, that an oral agreement for the sale of an interest in real property is invalid under the statute of frauds, and that there was an entire lack of consideration as a ground of plaintiff's claim. He argues that by reason of plaintiff's default in payments under the written agreement, he abandoned said agreement and terminated all right to the property thereunder, and is now claiming ownership of the property under an unexecuted oral agreement for which he gave no consideration. The evidence was not such that it must necessarily be concluded that the written agreement was abandoned by plaintiff. The evidence does not disclose that appellant terminated the agreement, or that he took any steps to terminate it, or that he gave notice to plaintiff that he intended to terminate it. On the contrary, there is evidence that defendant had no intention of terminating the agreement, or of requiring strict performance thereunder by plaintiff. The evidence shows that, as above indicated, when appellant learned of plaintiff's accident he told him that he would release him from making payments until he got on his feet. There was also evidence that, while the repair work was being done, appellant told the plaintiff the payments could be made after the repair work was completed—and that they agreed it "was an option" whether plaintiff lived on the property or sold it. Appellant told plaintiff's wife all he wanted was his money back with interest. Plaintiff, in reliance upon appellant's representations that payments need not be made, secured a permit to make the repairs, devoted about 10 months to making repairs and other im-

provements, used his own lumber in some of the repair work, borrowed money to pay for some of the labor, and procured the purchaser who bought the property. There is sufficient evidence that the written contract was in force and effect until the sale of the property to Milburn. The oral agreement between the parties did not relate to an interest in the real property, but related principally to the disposition of the proceeds from a sale thereof.

In view of the foregoing, it is unnecessary to discuss the other contentions.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.